Argued and submitted September 11, reversed and remanded for reconsideration December 20, 1989

JACKSON COUNTY,
*Petitioner,*

*v.*

EMPLOYMENT DIVISION et al,
*Respondents.*

(88-AB-1658; CA A50945)

784 P2d 119

Arminda J. Brown, Medford, argued the cause for petitioner. On the brief were Wendie L. Kellington, E. R. Jackson and Jackson County Counsel, Medford.

Lee S. Werdel, Medford, argued the cause and filed the brief for respondent Noreen Balog.

Jerome Lidz, Assistant Attorney General, Salem, waived appearance for respondent Employment Division.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

NEWMAN, J.

## NEWMAN, J.

Employer appeals from an order of the Employment Appeals Board that affirmed the decision of the referee that claimant was not disqualified from receiving benefits. We reverse and remand for reconsideration.

EAB made these findings of fact:

"(1) Claimant was employed by [Jackson County] from December 15, 1977, until September 15, 1988, as a juvenile group worker. (2) In January, 1988, the claimant and another employee received a warning for leaving a meat fork where juveniles could gain access to it. (3) On February 29, 1988, the claimant left a butcher knife on the kitchen counter when she left the kitchen to take a phone call. Juveniles could have gained access to that knife had they been present, which they were not. Claimant received a written warning and a one-day suspension without pay. She was advised that a further failure to perform her job adequately could result in stronger disciplinary action, including termination. (4) On or about August 8, 1988, claimant gave a juvenile a plastic comb. The claimant failed to remain with the juvenile while she used the comb, or to advise anyone she had given the juvenile the comb before she left at the end of her shift. The claimant requested that the juvenile ring or buzz her when she was finished using the comb. The juvenile did not do so. (5) The juvenile had suicidal tendencies, and used the comb to inflict scratches on her arms. The juvenile did not require a physician's attention for those scratches. (6) On or about August 11, 1988, when she returned from two days off work, the claimant was told what the juvenile had done. The claimant went to the juvenile to see what had happened, and asked the juvenile why she had scratched her arms. The claimant told the juvenile that her actions could have cost the claimant her job. (7) On August 12, 1988, the claimant was suspended without pay pending an investigation of the events that occurred on August 8 and August 11. The claimant was told that she could not return to the employer's premises as long as the juvenile remained in residence. (8) The claimant returned to work on August 18, 1988. Subsequently, she was given the option to retire or be terminated. The claimant opted to retire. Had she not done so, she would have been terminated. The claimant was willing to continue working for the employer after the incidents of August 8 and 11."

EAB concluded

"that the claimant's conversation with the juvenile was a violation of standards the employer had a right to expect from the claimant. Claimant knew or should have known that the conversation may have led to feelings of guilt or depression for the juvenile. The employer has a right to expect that its employees will not cause additional emotional upset to its clients. *However, the claimant's comments to the juvenile were an isolated instance of poor judgment.* The claimant's actions on August 11, 1988, when she spoke with the juvenile, were not of a similar nature to the incidents which occurred earlier in 1988, in which the claimant left dangerous kitchen utensils in areas where juveniles could potentially have access to them." (Emphasis supplied.)

Employer asserts that EAB erred when it concluded that claimant was discharged for an isolated instance of poor judgment rather than for misconduct connected with her work. *See* ORS 657.176(2)(a); OAR 471-30-038(3).[1] Employer asserts that EAB's conclusion does not rationally follow from its findings of fact.

In its conclusions, but not in its findings of fact, EAB stated that employer had discharged claimant "because of the conversation she had with the juvenile in which she advised the juvenile that she could have cost claimant her job." EAB did not make a finding of fact as to which act or acts of misconduct of claimant were the reason for her termination.[2]

---

[1] OAR 471-30-038(3) provides:

"Under the provisions of ORS 657.176(2)(a) and (b), misconduct is a wilful violation of the standards of behavior which an employer has the right to expect of an employe. An act that amounts to a wilful disregard of an employer's interest, or recurring negligence which demonstrates wrongful intent is misconduct. Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct for purposes of denying benefits under ORS 657.176."

[2] Claimant's immediate supervisor testified:

"A. * * * I called her into my office. I gave her the memo. * * * The important part was what she had said to the juvenile regarding her job, her position.

"Q. * * * Which was the more significant, * * * the giving of the comb to the juvenile, or the fact that she then went down and had a discussion with the juvenile about the incident?

"A. The fact of the discussion after the comb. She probably would have received some disciplinary action for giving the girl the comb because the scratches were fairly deep and she had a lot of them. * * * But it was the conversation after I had talked with her. And the idea that - on a suicidal girl, she was giving her some bad

EAB must make findings as to each contested issue of fact. ORS 183.470(2). Without a finding that employer discharged claimant only for her conversation with the juvenile, EAB's conclusion that the conduct for which employer terminated claimant was an isolated incident of poor judgment is not rationally connected to its factual findings. *See Waddles Restaurants, Inc. v. Employment Div.*, 99 Or App 709, 784 P2d 115 (1989); *City of Grants Pass v. Employment Division*, 94 Or App 328, 765 P2d 237 (1988).

Reversed and remanded for reconsideration.

---

messages as far as 'you got me into trouble and you may cost me my job.' "
The referee asked the supervisor:

"Q. Who actually made a decision to offer [claimant] the alternative of either retiring or being terminated?

"A. That would have been George Brown.

"Q. And you discussed the incident with Mr. Brown?

"A. Yes, he's my boss. He's the director of the Juvenile Department. * * *

"* * * * *

"Q. Did Mr. Brown consider all of [claimant's] past records when he made the decision?

"A. Yes, he did.

"Q. So it would have included the March incident also?

"A. Yes."